THE STATE, EX REL. MANOCCHIO, *v.* INDUSTRIAL COMMISSION OF OHIO

[Cite as State, ex rel. Manocchio, v. Industrial Comm., 3 Ohio App. 2d 38.]

(No. 7778—Decided July 13, 1965.)

*Messrs. Mancino, Mancino & Mancino*, for relator.
*Mr. William B. Saxbe*, attorney general, *Mr. Robert M. Duncan* and *Mr. Donald M. Colasurd*, for respondent.

DUFFEY, J. This is an original action in mandamus against the Industrial Commission of Ohio. Relator suffered injuries and was awarded compensation under the Workmen's Compensation Act. He then filed a claim for an additional award based on the violation of a specific safety requirement. The commission denied the claim. Relator asked this court for a writ requiring the commission to vacate that order and to grant him a special award.

The principal issue presented is whether Section 360 of Bulletin No. 202 of the commission (entitled "Specific Safety Requirements Relating to Building and Construction Work") imposes a specific safety requirement.

Section 360 of the bulletin provides:

"Section 360. Life lines and safety belts shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when engaged in securing or shifting thrustouts, inspecting or working on overhead machines supporting scaffolds or other high rigging, on steeply pitched roofs, by painters at work on poles or steel frame construction and by all workmen exposed to the hazards of falling when the operation being performed is more than fifteen (15) feet above solid ground or above a permanent floor or platform.

"EXCEPTION: Where in the opinion of the employer or his duly authorized representative in charge, their use creates a greater hazard."

In a recent unpublished opinion, this court found Sections 316 (b) and 317 (a) of Bulletin No. 202 to be specific requirements. The court commented that it was a known fact that the

requirements in Bulletin No. 202 were drafted in large part by people in the various trades and businesses rather than by attorneys. It was observed that the provisions should be read with a view toward their general context and a determination made on whether they convey a definite meaning when taken as a whole. *State, ex rel. General Maintenance & Engr. Co.,* v. *Tobin,* No. 7729, decided March 23, 1965.

The Attorney General has not contested the definiteness of Section 360 itself or its application to this case, *i. e.,* that portion which provides "Life lines * * * shall be provided * * * all workmen exposed to the hazards of falling when the operation being performed is more than fifteen (15) feet * * * above a permanent floor * * *." However, it is contended that the "exception" proviso to the section operates to destroy the apparent specificity of the section itself.

The proviso is simply an explicit statement of a reasonable exception which might well have been implied by a court in any event. A similar limitation is found in the use of the phrase "wherever practicable" contained in Section 247 of the bulletin. That section was held to be a specific requirement in *State, ex rel. Fast & Co.,* v. *Industrial Commission* (1964), 176 Ohio St. 199. In our opinion, the exception to Section 360 merely operates to create what is in practical effect an affirmative defense. An employer can avoid violation of the otherwise applicable requirement of Section 360 by showing that prior to commencing work he or his duly authorized representative made a distinct determination based on reasonable grounds that the use of the safety device would increase the hazards to the workmen. Cf. the comments of the court in *State, ex rel. Fast & Co.,* v. *Industrial Commission* (1964), 176 Ohio St. 199, at 201 and 202. The inclusion of such an excuse from compliance does not invalidate the section as a specific safety requirement.

The commission's investigator and its attorney-examiner recommended denial of relator's claimed violation of Section 360 on the ground that the "exception" proviso made the section a nonspecific requirement. The Industrial Commission's order itself states:

"Heard by Mr. Krise, Mr. Parker and Mr. Tobin: jp.

"Upon careful consideration and hearing by the Commission, it is the finding of the Commission that the Application

for Additional Award for Violation of Specific Safety Requirement filed herein on January 2, 1963, be denied for the reason that proof of record shows that the claimant's injuries were not caused by the employer's violation of any specific safety requirement.''

The Attorney General contends that the commission's order permits the inference that it may have determined as a fact that relator's injuries were not due to the violation. Cf. *State, ex rel. Newell,* v. *Industrial Commission* (1963), 174 Ohio St. 375. While this might be arguable on the wording of the order alone, we do not consider it a reasonable interpretation in the light of the two staff recommendations.

We also note that on the record here there is strong evidence that the injuries relator suffered would not have been sustained had he been equipped with a belt and a line. Relator was breaking up a 4,400-pound slab of concrete elevated more than 15 feet above the floor. The slab was resting on two ''I'' beams and overlapped the beams by about three feet on either side. About one-third of the concrete had been removed from one side of the slab. Relator and another man were standing on the opposite side engaged in removing a steel ladder. The slab was not keyed into the wall. With the removal of the ladder, the imbalance of the slab, plus the weight of the men, caused it to suddenly tilt up. The men and the slab fell. The evidence clearly indicates that the slab did not go past the vertical while falling, but rather struck the floor and then toppled over on the men.

The employer's safety engineer suggested that life lines would not have prevented the injuries because the lines would have been ''tied off'' to the platform itself. This proposition is not only hindsight, it is fallacious. Section 362 of Bulletin No. 202 provides that ''Life lines shall be securely fastened *above* the operation * * *.'' (Emphasis added.)

The engineer also suggested that if life lines had been used, the men would have been suspended in the air as the slab tilted and fell, and that the exposed reinforcing bars on the demolished side of the slab would then have injured them even more severely. Obviously, the speculation of the witness on the possibility of another injury from another possible cause is totally irrelevant to the question of whether the life lines would

have prevented the injury which did occur. The speculative nature of his hypothetical analysis is emphasized by the point, already noted, that on the evidence the slab did not in fact go past the vertical in sliding off the beam and falling to the floor.

The plain fact is, as the engineer himself admitted, that neither he nor anyone else connected with the employer realized that the slab was not anchored in any way. It had once been anchored to concrete corner pillars. These had been removed eight months earlier and replaced by the beams and an "A" frame brace of 10-inch pipe. Apparently the engineer is arguing that the hazard would have been increased by the use of life lines because of a condition of which he admittedly knew nothing. Again we point out that such an analysis has no bearing on whether the failure to provide the lines caused the injury which was in fact suffered. Rather it is a belated effort to come within the "exception" proviso of Section 360. However, that exception is not based upon an ex post facto analysis of what might have been, but requires a specific prior determination that life lines would increase the hazard.

While there is evidence from which the commission could well conclude that the injury was due to the lack of the required safety device, this court cannot usurp the commission's power and right to determine the facts. We hold only that Section 360 of the bulletin imposes a specific requirement and is applicable to this relator's claim. Since the commission's order was based upon an error of law, the writ will be confined to requiring vacation of the orders of March 31, 1964, and June 11, 1964, and to requiring the commission to assume jurisdiction to determine if relator's injuries were due to a violation of Section 360.

As so limited the writ of mandamus will be granted.

*Writ granted.*

Duffy, J. (Presiding), and Troop, J., concur.